HAROLD R. SMITH, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 90142.    Promulgated May 18, 1939.

*John M. Hudson, Esq.*, for the petitioner.
*Vernon F. Weekley, Esq.*, for the respondent.

894

OPINION.

TURNER: The respondent contends that the petitioner's surrender of the two land contracts and his conveyance of his interest in the properties to the vendor by quitclaim deeds, in consideration of the vendor's cancellation of his debts under the contracts, constituted "sales or exchanges" of capital assets within the purview of section 117 of the Revenue Act of 1934. He states on brief that we have

already held in *Betty Rogers*, 37 B. T. A. 897, that a transaction substantially the same as the transactions here involved constituted a "sale" of a capital asset and the loss sustained was therefore a capital loss. Petitioner contends that nothing was sold or exchanged by him but that the transactions in question were "merely an abandonment or surrender of the contracts and a release of the properties for which he received nothing in return."

Upon the execution of one of the land contracts on March 1, 1929, and the assignment of the other on June 6, 1929, petitioner became the equitable owner of two parcels of real estate. *Walker* v. *Casgrain*, 101 Mich. 608; 60 N. W. 292; and *Barnard* v. *Huff*, 252 Mich. 258; 233 N. W. 213. He took possession of the properties and entered them for taxation in his own name. In *Bowen* v. *Lansing*, 219 Mich. 117; 88 N. W. 384, it was said that "In equity the land belongs to the vendee, and may be sold, devised or encumbered by him, and on his death will descend to his heirs." Cf. *Conners* v. *Winans* (*1924*), 122 Misc. 824; 204 N. Y. S. 142. The vendor retains bare legal title to secure the performance of the contract. *Title & Trust Co.*, 33 B. T. A. 25. "The claim of the vendor is but an ordinary money debt, secured by the contract." *Bowen* v. *Lansing, supra*. The status of the parties is somewhat analagous to mortgagor and mortgagee. Williston on Contracts, vol. II, par. 791; *Barnard* v. *Huff. supra; Conners* v. *Winans, supra*. Accordingly, we think there can be no doubt that petitioner's rights to and interests in the two parcels of real estate were capital assets and the losses sustained resulted from the parting with those capital assets.

Our next question is whether the transactions herein constituted sales or exchanges within the meaning of section 117 of the statute. Under the terms and conditions of the contracts the vendor, upon petitioner's default, had the right (1) to treat the contracts as continuing in force and sue at law for the principal amount, (2) to bring action in equity for foreclosure of its vendor's lien and for a deficiency decree, or (3), to declare the contracts forfeited. See *Chicago Boulevard Land Co.* v. *Apartment Garages*, 245 Mich. 448; 222 N. W. 697. The vendor did not exercise any of those alternatives, however, and the contracts were terminated by mutual consent and agreement of the parties, whereby petitioner voluntarily surrendered his rights to and in the lands to the vendor in consideration of the cancellation by the latter of the remaining indebtedness. Petitioner also executed and delivered to the vendor quitclaim deeds to the two parcels of real estate, wherein it was recited that petitioner and his wife "by these presents grant, bargain, sell, remise, release and forever quitclaim" the said parcels of real estate unto the vendor. As to the lack of necessity in such case for a conveyance in writing, see *Underwood*

v. *Slaght*, 213 Mich. 391; 182 N. W. 106. Petitioner argues that he merely "abandoned" the contracts, but that term does not describe the transactions. The petitioner being in default, the vendor had the right to treat such default as an abandonment by the petitioner of his rights under the contracts, *Dundas* v. *Foster*, 281 Mich. 117; 274 N. W. 731, but it did not do so. Petitioner was obligated to make further payments and we know of no way in which an attempt at abandonment of the contracts would have been effective. He would at the election of the vendor still have been subject to a suit at law for the balance of the principal amount, or to an action in equity for foreclosure of the vendor's lien on the two parcels of real estate and for a deficiency decree for the unsatisfied portion of the indebtedness. By a new agreement between the parties, however, the vendor reacquired the two parcels of real estate previously sold to petitioner, in one instance to petitioner's assignor, and petitioner satisfied his additional personal liability under the contracts as effectively as if he had received payment for the two properties in cash and used such cash in paying the balance of his liability under the contracts. We conclude therefore that the transactions here in question were sales or exchanges within the meaning of the statute. *Betty Rogers*, *supra*. See also *Henry Heldt*, 16 B. T. A. 1035, wherein we held there was an exchange of property for other property under substantially similar circumstances.

The petitioner contends that the facts in *Betty Rogers*, *supra*, are distinguishable from the facts in the instant case, and, further, that if the two cases are not distinguishable the former is unsound and should be overruled. He relies principally on *Commonwealth, Inc.*, 36 B. T. A. 850; *Sol Greisler*, 37 B. T. A. 542; affd., 102 Fed. (2d) 787; *Hale* v. *Commissioner*, 85 Fed. (2d) 819; and *Dallas Transfer & Terminal Warehouse Co.* v. *Commissioner*, 70 Fed. (2d) 95. While there are some minor distinctions in form between the instant case and the *Betty Rogers* case, the results sought by the parties and the effect of their acts are precisely the same. In *Betty Rogers*, *supra*, the debt in question was secured by a deed of trust rather than a land contract. The vendor retained a lien on the property as security for the balance of the purchase price, the legal title being placed in a trustee. In the instant case the vendor retained bare legal title as security for the payment of the balance of the purchase price and the petitioner became the equitable owner of the property. In both cases, by agreement of the parties, the properties were reconveyed to the vendor. In the *Betty Rogers* case that was accomplished by having the trustee convey legal title to the vendee, who in turn conveyed the property to the vendor. In the present case the same result was accomplished by the surrender and cancellation

of the contracts. See *Underwood* v. *Slaght, supra.*. In both cases the consideration flowing to the vendee was his release from his obligation to pay the balance of the purchase price.

Petitioner further contends that *Betty Rogers, supra,* is distinguishable from the instant case in that the fair market value of the properties herein at the time of the transactions involved was less than or not in excess of the vendee's debts under the contracts, whereas in the *Betty Rogers* case the deed recited that the consideration received by the grantor was equal to the fair market value of the grantor's interest in the land. The important thing is that the vendee, in consideration for his interest in the two parcels of real estate, received valuable consideration, namely, the release from his personal liability under the contracts. The record here does not show whether the petitioner was financially able to pay the debts or whether the vendor might have collected the full amount of the debts by appropriate legal action. The record does show, however, that the vendor was willing to and did accept the properties in lieu of its claims under the contracts and that petitioner agreed to accept the cancellation of his indebtedness in lieu of his interests in the properties. The settlement was reached by agreement of the parties, and whether the ultimate result was in fact favorable to the vendor or to the petitioner appears of little significance. The possibility that one of the parties might, and in most sales or exchanges probably does, obtain a better bargain than the other does not serve to make a transaction any the less a sale or exchange.

*Commonwealth, Inc., supra,* and *Sol Greisler, supra,* are altogether different from the instant case and from *Betty Rogers, supra.* In neither of those cases did the vendee assume the mortgage liability and upon the conveyance of the property in the one case and its sale under foreclosure in the other, the vendee, being subject to no further liability, received no consideration. *Hale* v. *Commissioner, supra,* was discussed and distinguished in our opinion in *Betty Rogers, supra,* and the reasoning there is equally applicable here. *Dallas Transfer & Terminal Warehouse Co.* v. *Commissioner, supra,* is obviously not in point. That case involved a question of the realization of gain, while in the instant case we are merely concerned with the nature of a loss. Furthermore, the decision in that case turned on the fact that the debtor was insolvent. No such facts are present in the instant case.

We accordingly conclude that the transactions herein constituted sales or exchanges of capital assets and sustain the respondent's determination that the losses were capital losses.

Reviewed by the Board.

*Decision will be entered under Rule 50.*